UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KEVIN TUER,

    Plaintiff,

vs.                              No. 16-cv

THE UNITED STATES OF AMERICA,
MICHIGAN HEALTH PROFESSIONALS, P.C.,
A Michigan professional corporation,
MICHIGAN UROLOGICAL INSTITUTE, P.C.,
a Michigan professional corporation, and
PATRICK HURLEY, M.D., Jointly and severally.

    Defendants.
_____/

Matthew L. Turner (P48706)
SOMMERS SCHWARTZ, P.C.
Attorneys for Plaintiff
One Towne Square, 17th Floor
Southfield, MI  48076
(248) 355-0300
_____/

There is no other civil action pending or was previously filed and dismissed, transferred, or otherwise disposed of arising out of the transaction or occurrence alleged in the Complaint.

/s/ Matthew L. Turner
Matthew L. Turner (P48706)

**COMPLAINT**

NOW COMES Plaintiff, KEVIN TUER, by and through his attorneys, SOMMERS SCHWARTZ, P.C., and complaining against the above-named Defendants, states:

**PARTIES AND JURISDICTION**

1. That at all times pertinent hereto, Plaintiff, KEVIN TUER, was and is a resident of the City of Milford, County of Oakland, State of Michigan.

2. Plaintiff brings these claims against Defendant, THE UNITED STATES OF AMERICA, pursuant to the Federal Tort Claims Act (FTCA) 28 U.S.C. §§ 1346(b) and 2671-2680.

3. Defendant, MICHIGAN HEALTH PROFESSIONALS, P.C. is a corporation organized under the laws of the State of Michigan, located and doing business in Oakland County, Michigan.

4. Defendant, MICHIGAN UROLOGICAL INSTITUTE, P.C. is a corporation organized under the laws of the State of Michigan, located and doing business in Oakland County, Michigan.

5. Defendant, PATRICK HURLEY, M.D. is a physician licensed to practice in the State of Michigan who, at all times relevant to the allegations of this complaint, practiced in Oakland County, Michigan.

6. This Court has jurisdiction over the federal claims against the United States of America under 28 U.S.C. §§ 1331 and 1346(b). This Court has supplemental jurisdiction over the state law claims under 28 U.S.C. §§ 1367.

7. The events, acts and omissions giving rise to these claims occurred within the United States Judicial District of the Eastern District of Michigan.

8. Venue is proper pursuant to 28 U.S.C. §1391(b).

**FACTUAL ALLEGATIONS**

9. Plaintiff, KEVIN TUER, hereby incorporates the preceding paragraphs by reference.

10. On or about September 3, 2008, Dr. Patrick Hurley performed a prostate biopsy on Kevin Tuer. The biopsy was interpreted as showing benign prostatic tissue with areas of chronic active inflammation.

11. On or about January 30, 2012, Kevin Tuer had his PSA and testosterone levels tested by Dr. George Shanlikian which showed an elevated PSA (4.54 ng/ml) and low testosterone (324 mg/dl).

12. On or about February 13, 2012, Kevin Tuer had his PSA and testosterone levels tested by Dr. Hurley which showed further elevation in PSA (5.89 ng/ml) and low testosterone (323 ng/ml).

13. On or about February 22, 2012, Kevin Tuer was diagnosed with hypogonadism by Dr. Shanlikian. Dr. Shanlikian planned to start Mr. Tuer on Testosterone cypionate at a dose of 20 IU subcutaneously twice per week.

14. Kevin Tuer had informed Dr. Shanlikian that his father had prostate cancer and that he was scheduled to have a prostate biopsy.

15. On or about April 17, 2012, Dr. Hurley checked Kevin Tuer's PSA levels which had risen to 8.39.

16. On or about May 16, 2012, Dr. Hurley performed a second transrectal prostate biopsy on Kevin Tuer. The results were again interpreted as benign with prostatic tissue with some evidence of acute inflammation and microfocal prostatitis. One of the twelve cores (left lateral mid core) did not include any prostate cells.

17. Dr. Hurley saw Mr. Tuer in follow up on June 15, 2012 and discussed Mr. Tuer's desire for exogenous testosterone treatment. Dr. Hurley reviewed the findings and indicated that he felt it was safe to begin exogenous therapy.

18. On or about September 14, 2012 Mr. Tuer was seen by Dr. Hurley following complaints of weak urinary system and nocturia once per night due to benign prostatic hypertrophy. At this time, it was noted that his most recent PSA was 8.4 ng/ml.

19. On or about September 24, 2012, Kevin Tuer visited with Dr. Christopher Smith, his new primary care physician, at the VA Medical Center in Ann Arbor. Dr. Smith documented that his father had metastatic prostate cancer. Dr. Smith obtained a baseline PSA which was 5.04. Dr. Smith concluded that this was consistent with the prior false positive results that he had in the past.

20. On or about October 26, 2012, Kevin Tuer had another PSA test ordered by Dr. Hurley which was slightly lower but still elevated (4.79 ng/ml).

21. On or about February 6, 2013, Mr. Tuer filled his first prescription for testosterone therapy.

22. Mr. Tuer did not have his PSA levels checked until a visit with Dr. Shanlikian on October 21, 2013, almost a 1-year gap since his last "false positive" PSA test, despite visiting with Dr. Smith multiple times between tests. His PSA test showed continued elevated levels (5.8 ng/ml). Additionally, Dr. Shanlikian increased the weekly testosterone dose from 20 to 25 IU.

23. On or about April 30, 2014, Mr. Tuer returned to see Dr. Shanlikian. Labs were drawn at this visit which showed his testosterone was low at 324. His PSA at this time had dramatically increased to 14.91, representing near tripling over 6-months.

LAW OFFICES
SOMMERS SCHWARTZ, P.C.
ONE TOWNE SQUARE • 17th FLOOR • SOUTHFIELD, MICHIGAN 48076 • (248) 355-0300

24. Mr. Tuer went for a routine follow-up with Dr. Smith on July 16, 2014. His PSA was drawn at this visit (14.87 ng/ml), marking a nearly two-year period without drawing PSA levels despite seeing Mr. Tuer multiple times following his elevated PSA level drawing in September of 2012. Dr. Smith then notified Mr. Tuer of the elevation.

25. Mr. Tuer had his PSA re-checked by Dr. Hurley on July 23, 2014. The results showed an elevated PSA level (14.11). Dr. Hurley recommended a 12-core random transrectal biopsy followed by repeat PSA. No digital rectal exam was documented and a prostate MRI was not ordered. A saturation biopsy was not performed.

26. The results of the biopsy showed benign prostatic tissue with no sign of inflammation or prostatitis. Dr. Hurley discussed the results of the biopsy with Mr. Tuer over the phone a week or more later and informed him that it was benign and that he did not have prostate cancer.

27. Mr. Tuer requested that Dr. Hurley's office staff forward the records of the 12-core random transrectal biopsy to Dr. Smith.

28. Dr. Hurley's staff never forwarded the 12-core random transrectal biopsy to Dr. Smith.

29. On or about September 18, 2014, Dr. Smith ordered a repeat PSA and the results remained significantly elevated (13.63 ng/ml).

30. On or about September, 20, 2014, Dr. Smith wrote an addendum to the chart as follows:

> Reviewed recent PSA with patient. He informs me that last month he went to a urology friend of his in the community who did a saturation biopsy and the results were negative. His PSA is still elevated this month but may be a reflection of that saturation biopsy. He will have all results faxed over to me but this is now his third negative biopsy with his most recent one being a saturation biopsy. We will continue to trend the PSA's annually but I

5

would be hesitant to every [sic] recommend a fourth biopsy in the future. Patient in agreement with plan.

31. Mr. Tuer never informed Dr. Smith that he had a saturation biopsy contrary to Dr. Smith's note on Mr. Tuer's chart and he did not have a saturation biopsy.

32. Had Dr. Smith followed up and obtained the records from Dr. Hurley, he would have known that no saturation biopsy took place.

33. Had Dr. Hurley's office not failed to send the records to Dr. Smith, Dr. Smith would have known that no saturation biopsy took place.

34. On or about February 3, 2015 Mr. Tuer returned to Dr. Smith. No PSA was drawn and Dr. Smith's record implies that the previous PSA elevation was due to inflammation.

35. On or about April 9, 2015, Mr. Tuer returned to Dr. Smith's office. No PSA lab was ordered.

36. On or about July 17, 2015, Mr. Tuer visited with Dr. Smith. A PSA lab was ordered and Mr. Tuer's PSA had risen again to 18.02 ng/ml. As a result of the elevated PSA, Dr. Smith ordered an MRI of the prostate.

37. On or about September 4, 2015 the MRI-prostate w/woc was performed and the impression of the radiologist stated:

> Prostate gland measures 3.6 x 5.7 x 4.8 cm.  Three PI-RADS category 3 lesions.  No seminal vesicle involvement.  +BPH.  No enlarged nodes.  No aggressive osseous lesions.

38. On or about September 15, 2015, Dr. Smith made a chart entry stating that there was still no clear evidence of prostate cancer but there were 3 areas that were concerning within the prostate. Dr. Smith placed a urology consult for Mr. Tuer.

39. The urology consult resulted in an MR cognitive fusion biopsy which was performed on or about November 24, 2015.

LAW OFFICES
SOMMERS SCHWARTZ, P.C.
ONE TOWNE SQUARE • 17th FLOOR • SOUTHFIELD, MICHIGAN 48076 • (248) 355-0300

6

40. The MR cognitive fusion biopsy was positive for prostatic adenocarcinoma.

41. On or about January 26, 2016, Mr. Tuer was admitted to the VA-Ann Arbor for a robotic-assisted laparoscopic prostatectomy (RALP) with pelvic lymph node dissection. Due to locally advance disease with extension beyond the capsule, only partial nerve sparing was possible on the left side.

42. As a result of the extraprostatic extension, Mr. Tuer was upgraded to a pathologic stage of pT3aN0Mx [Stage III].

43. A subsequent MRI was interpreted to reveal a 3.2 x 1.3-cm soft tissue enhancement at the bladder base. Pathologic review of the prostatectomy slides identified metastasis to one of the right-sided nodes, resulting in upgrade to Stage IV (pT3aN1M0) disease.

## COUNT I – STATE LAW MEDICAL NEGLIGENCE

44. Plaintiff, KEVIN TUER, hereby incorporates the preceding paragraphs by reference.

45. On or about May 16, 2012 and for a period of time thereafter, Mr. Tuer delivered and submitted himself to Dr. Hurley, Michigan Urological Institute, P.C. and Michigan Health Professionals, P.C., for evaluation of his prostate and did then and there, impliedly and/or expressly, hire and employ Dr. Hurley to do that which was proper and necessary in the premises, in accordance with the prevailing standards of practice and care of physicians specializing in urology throughout the nation, and that said Defendant did then and there, impliedly and/or expressly, represent to use due, reasonable and proper skill in the care and treatment of Kevin Tuer in accordance with the standards then prevailing.

46. Defendants, Dr. Patrick Hurley, Michigan Urological Institute, P.C., and Michigan Health Professionals, P.C., in disregard of their duties and obligations to Mr. Tuer and at variance with the prevailing standards of practice and care, was guilty of negligence and malpractice in the following particulars:

   a. Failing to perform an MRI guided cognitive fusion biopsy or a saturation biopsy on July 30, 2014 in light of the patient's family history, PSA results, and two prior negative biopsies;

   b. If an MRI guided cognitive fusion biopsy was performed on July 30, 2014 and was still negative, the patient should have been scheduled for follow up with Dr. Hurley and repeat PSA in three months;

   c. If a saturation biopsy was not done on July 30, 2014, and the MRI guided cognitive fusion biopsy which could have been done on that date was still negative, a saturation biopsy needed to be done in October or November of 2014 due to the persistently elevated PSA.

47. It is more likely than not, that had Dr. Hurley performed a saturation biopsy on May 16, 2012, or a pre-operative MRI to enable targeted biopsy of any abnormal or suspicious areas, Mr. Tuer's prostate cancer would have been significantly smaller and contained within the prostate gland, allowing complete resection and bilateral nerve sparing surgery, without the necessity of multimodal therapy and its associated morbidity.

48. It is more likely than not that had Dr. Hurley complied with the above standard of care, the known limitations of TRUS biopsy in an at-risk patient like Kevin Tuer, with prior negative biopsies would have required either a saturation biopsy or pre-biopsy MRI followed by targeted biopsy, thus ensuring diagnosis in July 2014, as opposed to November of 2015, amounting to a 16-month delay in diagnosis.

**COUNT II-FEDERAL TORT CLAIMS ACT**

49. Plaintiff repeats and re-alleges paragraphs 1-48 as though more fully stated herein.

LAW OFFICES
SOMMERS SCHWARTZ, P.C.
ONE TOWNE SQUARE • 17th FLOOR • SOUTHFIELD, MICHIGAN 48076 • (248) 355-0300

8

50. At all relevant times that Christopher Alan Smith, M.D. provided medical treatment to Kevin Tuer, he was an employee of the United States Government providing medical care at the Ann Arbor Veterans Administration facility.

51. On May 20, 2016 Plaintiff presented a claim for Damage, Injury or Death relating to Kevin Tuer on the Department of Veterans Affairs (**Exhibit 1**).

52. On June 22, 2016 the U.S. Department of Veterans Affairs (VA) acknowledged receipt of the claim on May 24, 2016 and requested additional information regarding the claim (**Exhibit 2**).

53. On October 26, 2016 Plaintiff provided additional information as requested by the Government. On November 10, 2016 the claim was denied by the Department of Veterans Affairs (**Exhibit 3**). This case is being timely filed within six months of the denial of the claim.

54. On or about September of 2012 and for a period of time thereafter, Mr. Tuer delivered and submitted himself to Dr. Christopher Alan Smith, M.D. and the VA Ann Arbor Healthcare System, for evaluation of his prostate and did then and there, impliedly and/or expressly, hire and employ Dr. Smith to do that which was proper and necessary in the premises, in accordance with the prevailing standards of practice and care of physicians throughout the nation specializing in internal medicine, and that said Defendant did then and there, impliedly and/or expressly, represent to use due, reasonable and proper skill in the care and treatment of Kevin Tuer in accordance with the standards then prevailing.

55. Defendant United State of American through its employed physician Dr. Christopher Alan Smith, in disregard of its duties and obligations to Mr. Tuer and at variance with the prevailing standards of practice and care, was guilty of negligence and malpractice in the following particulars:

      a.    As of the visit on September 18, 2014, obtain an accurate history of the type of biopsy performed which was not a saturation biopsy;

      b.    Follow through and obtain the medical records as Dr. Smith indicated were necessary in his addendum note dated September 20, 2014;

      c.    Repeat the PSA in 2014 after obtaining the prior results and records.

56.    Had Dr. Smith obtained an accurate history, followed up and obtained the records, and ordered a repeat PSA in 2014, Mr. Tuer's prostate cancer would have been diagnosed about a year earlier and he would have needed less invasive treatment.

WHEREFORE, Plaintiff, KEVIN TUER, respectfully claim judgment against the Defendants, THE UNITED STATES OF AMERICA, MICHIGAN HEALTH PROFESSIONALS, P.C., MICHIGAN UROLOGICAL INSTITUTE, P.C., and PATRICK HURLEY, M.D., jointly and severally, for whatever amount Plaintiff is found to be entitled as determined by the trier of fact, together with interest, costs and attorney fees.

SOMMERS SCHWARTZ, P.C.

By: /s/ Matthew L. Turner
    Matthew L. Turner (P48706)
    Attorneys for Plaintiff
    One Towne Square, 17th Floor
    Southfield, MI  48076
    (248) 355-0300
    mturner@sommerspc.com

Dated:  November 30, 2016

LAW OFFICES
SOMMERS SCHWARTZ, P.C.
ONE TOWNE SQUARE • 17th FLOOR • SOUTHFIELD, MICHIGAN 48076 • (248) 355-0300

LAW OFFICES
**SOMMERS SCHWARTZ, P.C.**
ONE TOWNE SQUARE • 17th FLOOR • SOUTHFIELD, MICHIGAN 48076 • (248) 355-0300

## AFFIDAVIT OF MERIT OF TONY LUONGO, M.D.

STATE OF MASSACHUSETTS    )
                          ) §
COUNTY OF                 )

TONY LUONGO, M.D., being first duly sworn, deposes and says:

1. I am a medical doctor specializing and board certified in urology.

2. That during the year of the occurrence which is the basis for the claim and for at least one year prior, I devoted more than 50% of my professional time to the active clinical practice of urology.

3. I have reviewed Plaintiff's Notice of Intent to File a Claim and all medical records supplied to me by Plaintiff's attorneys concerning the allegations contained in said Notice.

4. The applicable standard of practice or care in this matter required that Patrick Hurley, M.D. provide reasonable care, diligence, learning, judgment and skill ordinarily and/or reasonably exercised and possessed by a board certified urologist under the same or similar circumstances.

5. In my opinion the applicable standard of practice or care in this matter was breached by Patrick Hurley, M.D., in the following particulars:

    a. Failing to perform an MRI guided cognitive fusion biopsy or a saturation biopsy on July 30, 2014 in light of the patient's family history, PSA results, in two prior negative biopsies;

    b. If an MRI guided cognitive fusion biopsy was performed on July 30, 2014 and was still negative the patient should have been scheduled for follow up with Dr. Hurley and repeat PSA in three months;

    c. If a saturation biopsy was not done on July 30, 2014, and the MRI guided cognitive fusion biopsy which could have been done on that date was still negative, a saturation biopsy needed to be done in October or November of 2014 due to the persistently elevated PSA;

2

6. The actions that should have been taken by Dr. Hurely in order to have complied with the applicable standards of care are as follows:

    a. Perform an MRI guided cognitive fusion biopsy or saturation biopsy on July 30, 2014;

    b. Schedule the patient for follow up and repeat PSA within 3 months of July 30, 2014 if an MRI guided cognitive fusion biopsy was performed and remained negative;

    c. Perform a saturation biopsy in October or November of 2014 if an MRI guided cognitive fusion biopsy was done in July and was negative;

7. As a result of the breaches of the standards of practice and care, according to the medical records, the diagnosis of Mr. Tuer's cancer was delayed from at least November of 2014 until it was diagnosed on November 24, 2015. Had a saturation biopsy been done in either July of 2014 or October/November of 2014 it would have been positive. An MRI guided cognitive fusion biopsy done in July of 2014 may have been positive, but if it was negative it would have been followed up with a saturation biopsy in October/November of 2014 that would have been positive. There was a 12-15 month delay in the diagnosis of Mr. Tuer's prostate cancer. Had the cancer been diagnosed in November of 2014 or earlier, the cancer would not have spread to a lymph node and would have been confined to the capsule. Mr. Tuer would not have needed systemic treatment and he could have undergone nerve sparing surgery. His functional outcome and his prognosis would be much improved.

8. The opinions expressed in this Affidavit are based upon the documents and materials referred to in paragraph 2 above and are subject to modification based upon additional information which might be provided at some future date.

9. I solemnly affirm under the penalties of perjury that the contents of the foregoing paper are true to the best of my knowledge, information and belief.

*[Signature]*
TONY LUONGO, M.D.

STATE OF MASSACHUSETTS )
                                ) §
COUNTY OF Suffolk     )

Sworn to (or affirmed) and subscribed before me this 29 day of July, 2016, by

_____
Notary Public's Full Signature as it appears on Notary Certificate

Antoinette Simmons
Notary Public Name (Type or Print)

Date of Notary Expiration: 12-9-2016

Personally known ✓
OR Produced Identification _____

Type of Identification Produced _____

(SEAL)

LAW OFFICES
SOMMERS SCHWARTZ, P.C.
ONE TOWNE SQUARE • 17th FLOOR • SOUTHFIELD, MICHIGAN 48076 • (248) 355-0300

4

**AFFIDAVIT OF MERIT OF**
**MICHAEL YAFFE, M.D.**

LAW OFFICES
SOMMERS SCHWARTZ, P.C.
ONE TOWNE SQUARE • 17TH FLOOR • SOUTHFIELD, MICHIGAN 48076 • (248) 355-0300

Re: Kevin Tuer

## AFFIDAVIT OF MERIT OF
## MICHAEL YAFFE, M.D.

STATE OF OHIO        )
                     ) SS
COUNTY OF FRANKLIN   )

MICHAEL YAFFE, M.D., being first duly sworn, deposes and says:

1. I am a medical doctor board certified in the specialty of internal medicine and licensed to practice medicine in the State of Ohio.

2. That during the year immediately preceding the occurrence, which is the basis for the claim, I devoted a majority of my professional time to the active clinical practice of internal medicine.

3. I have reviewed Plaintiff's NOTICE OF INTENT TO FILE CLAIM and all medical records of KEVIN TUER supplied to me by Plaintiff's attorneys concerning the allegations contained in said Notice.

4. The applicable standard of practice or care in this matter required that Dr. Christopher Smith, while providing medical care for Kevin Tuer at the Veterans Administration, provide the care and treatment expected of an internal medicine specialist of ordinary learning, judgment and skill, including, but not limited to:

    a. As of the visit on September 18, 2014, obtain an accurate history of the type of biopsy performed which was not a saturation biopsy;

2

      b.    Follow through and obtain the medical records as Dr. Smith indicated were necessary in his addendum note dated September 20, 2014;

      c.    Repeat the PSA in 2014 after obtaining the prior results and records.

5.    That, in my opinion, the records reflect that the applicable standard of practice or care in this matter was breached by Dr. Christopher Smith by virtue of the failure to do those things set forth above and below.

6.    That, in my opinion, the actions that should have been taken or omitted by Dr. Christopher Smith, while providing medical care for Kevin Tuer at the Veterans Administration, in order to have complied with the applicable standard of practice or care, include, but are not limited to:

      a.    As of the visit on September 18, 2014, obtain an accurate history of the type of biopsy performed which was not a saturation biopsy;

      b.    Follow through and obtain the medical records as Dr. Smith indicated were necessary in his addendum note dated September 20, 2014;

      c.    Repeat the PSA in 2014 after obtaining the prior results and records.

7.    That, in my opinion, had Dr. Smith obtained an accurate history, followed up and obtained the records, and ordered a repeat PSA in 2014, Mr. Tuer's prostate cancer would have been diagnosed about a year earlier and he would have needed less invasive treatment.

8.    The opinions expressed in this Affidavit are based upon the documents and materials referred to in Paragraph 3 above and are subject to modification based upon additional information including, but not limited to, deposition testimony and subsequent medical care records which might be provided at some future date.

3

I declare, under penalty of perjury under the laws of the United States of America, that the foregoing is true and correct.

_____
MICHAEL YAFFE, M.D.

STATE OF OHIO         )
                      ) SS
COUNTY OF FRANKLIN    )

Sworn to (or affirmed) and subscribed before me this __17__ day of October, 2016, by Michael Yaffe, M.D.

_____
Notary Public – Signature

_____
Notary Public Name (Type or Print)
(SEAL)

    Personally Known        __✓__

    OR Produced Identification    ____

    Type of Identification Produced  ____



LAW OFFICES
SOMMERS SCHWARTZ, P.C.
ONE TOWNE SQUARE • 17TH FLOOR • SOUTHFIELD, MICHIGAN 48076 • (248) 355-0300

4